UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-CV-14356-DMM

STEPHEN SPILKER,

Plaintiff,

v.

INDIAN RIVER MEMORIAL HOSPITAL d/b/a CLEVELAND CLINIC INDIAN RIVER HOSPITAL,

Defendant.
_______________________________________/

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 98)**

Defendant, Indian River Memorial Hospital d/b/a Cleveland Clinic Indian River Hospital ("Cleveland Clinic"), moves for summary judgment on all claims asserted by Plaintiff, Stephen Spilker. ECF No. 98. Mr. Spilker brings claims for racial discrimination under the Florida Civil Rights Act ("FCRA"), gender discrimination under the FCRA, retaliation under the FCRA, racial discrimination under 42 U.S.C. § 1981, racial discrimination under Title VII, gender discrimination under Title VII, and retaliation under Title VII. ECF No. 8. U.S. District Judge Donald M. Middlebrooks referred the Motion to me for a report and recommendation. ECF No. 75. For the following reasons, it is **RECOMMENDED** that the Motion for Summary Judgment be **GRANTED** and judgment entered in favor of Cleveland Clinic.

## PROCEDURAL POSTURE

Rather than appeal my rulings to U.S. District Judge Donald M. Middlebrooks as required under the Local Rules, Mr. Spilker has filed various notices and requests seeking an interlocutory appeal with the Eleventh Circuit under 28 U.S.C. § 1292. ECF Nos. 106, 109, 121, 126. Section 1292 allows for an interlocutory appeal to be taken only in specifically enumerated circumstances not at issue here, or when a district judge is of the opinion that an interlocutory order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation" and the district judge "so state[s] in writing in such order." 28 U.S.C. § 1292(a)-(b). The application for an appeal under § 1292 "shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." § 1292(b). As explained in the Court's denial of Mr. Spilker's request to proceed *in forma pauperis* on appeal, ECF No. 130, the appeal is not taken in good faith and is frivolous, and the Court has not stayed proceedings. Accordingly, this matter is not stayed pending Mr. Spilker's appeal, and ruling on Cleveland Clinic's Motion for Summary Judgment is proper.

## SUMMARY JUDGMENT STANDARD

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> The parties may support their positions by citation to the record, including *inter alia*, depositions, documents, affidavits, or declarations.

> Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." A fact is material if it "might affect the outcome of the suit under the governing law." The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor.
> …
>
> The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. Once this burden is satisfied, "the nonmoving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in his favor.

*Rubenstein v. Fla. Bar*, 72 F. Supp. 3d 1298, 1306–08 (S.D. Fla. 2014) (citations omitted). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

> The moving party's burden on a motion for summary judgment "depend[s] on whether the legal issues ... are ones on which the movant or the non-movant would bear the burden of proof at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). "[F]or issues on which the movant would bear the burden of proof at trial, 'that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.'" *Id.* (emphasis in original) (quoting *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. In State of Ala.*, 941 F.2d 1428, 1437 (11th Cir. 1991)). "For issues, however, on which the non-movant would bear the burden of proof at trial, 'the moving party is not required to support its

> motion with affidavits or other similar material *negating* the opponent's claim in order to discharge this initial responsibility.'" *Id.* (emphasis in original) (quoting *Four Parcels*, 941 F.2d at 1437–38).

*Nunez v. Coloplast Corp.*, 461 F. Supp. 3d 1260, 1264 (S.D. Fla. May 20, 2020).

Federal Rule of Civil Procedure 56 and Local Rule 56.1 mandate the procedure for pleading (and responding to) a Motion for Summary Judgment. Rule 56(c)(1) states:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Our Local Rules require even greater specificity. Each asserted or disputed fact must be "supported by specific, pinpoint references" to particular parts of the record. S.D. Fla. L.R. 56.1(b)(1)(B), (b)(2)(A); *see also* Order Setting Trial and Pre-Trial Schedule, ECF No. 10 at 4. "The pinpoint citations shall reference pages and line numbers, if appropriate, of exhibits, designate the number and title of each exhibit, and provide the ECF number of all previously filed materials used to support the Statement of Material Facts. When a material fact requires specific evidentiary support, a general citation to an exhibit without a page number or pinpoint citation (e.g., 'Smith Affidavit' or 'Jones Deposition' or 'Exhibit A') is non-compliant." S.D. Fla. L.R. 56(b)(1)(B).

The Court has discretion to disregard a factual assertion or dispute that is not properly presented or supported. Fed. R. Civ. P. 56(e); S.D. Fla. L.R. 56.1(c), (d). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). A factual assertion that is not properly disputed may be deemed admitted "provided that: (i) the Court finds that the material fact is supported by properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does not apply." S.D. Fla. L.R. 56.1(c).

**UNDISPUTED FACTS**

In compliance with Local Rule 56.1, Cleveland Clinic filed a 41-paragraph Statement of Material Facts ("SOMF") with citations for each paragraph. ECF No. 97. Mr. Spilker did not respond to Cleveland Clinic's SOMF, in violation of Local Rule 56.1. On July 17, 2026, the Court gave Mr. Spilker an opportunity to correct this violation by filing a response to the SOMF by July 27, 2026. ECF No. 111. Rather than comply with the Local Rule, Mr. Spilker filed an additional response to the

motion for summary judgment that consisted primarily of argument, unsupported allegations, and a handful of citations to docket entries and exhibits. ECF No. 116. Accordingly, Cleveland Clinic's properly supported facts in the SOMF are deemed admitted. Where Mr. Spilker has identified and supported facts that have not been disputed, those facts are included below. Even if the SOMF's facts were not deemed admitted, Mr. Spilker fails to come forth with evidence in support of his claims, there is no genuine dispute of material fact, and Cleveland Clinic is entitled to summary judgment.

The following facts are undisputed for purposes of the Motion:

Mr. Spilker obtained his Certified Nursing Assistant license on January 15, 2015. ECF No. 97 ¶1; ECF No. 95-1. Cleveland Clinic hired Mr. Spilker as a Patient Care Nurse Assistant on April 10, 2023. ECF No. 94-6. He rotated to different departments. ECF No. 64, Spilker Dep. 164: 15-17. Mr. Spilker obtained an Associate in Arts degree on August 4, 2023, and a Bachelor of Applied Science degree on December 8, 2023. ECF No. 86-1 at 66-68.

Mr. Spilker applied for various jobs within Cleveland Clinic during his employment:

1. Manager – Patient Transportation. ECF No. 94-2 at 1, ECF No. 94-38. The position required a minimum of three years of supervisory experience, with a preference for patient transportation experience. ECF No. 94-13. Mohammed Shdifat was hired for the position. ECF No. 64, Spilker Dep. 59:9-15, 103:14-16. Mr. Spilker had no information about Mr. Shdifat's

experience or qualifications. *Id.* 103:14-24. Mr. Shdifat's qualifications included: (i) over three years of experience as an Assistant Director of Environmental Services and Patient Transport at three facilities operated by Crothall Healthcare; (ii) an additional year as Bureau Chief for the State of Delaware Department of Public Health; and (iii) a Master of Science degree in Health Services Administration. ECF No. 94-14. On March 10, 2024, Spilker was notified that he did not receive the position of Manager-Patient Transportation. ECF No. 94-38.

2. SQPE Specialist. Mr. Spilker applied for this position October 30, 2024. ECF No. 94-2 at 1. Cleveland Clinic hiring manager, Michelle Comeaux, interviewed Mr. Spilker and did not select him for the position; she selected Marilyn Sherman. ECF No. 64, 107:6-17. Mr. Spilker later attended a meeting with Ms. Comeaux, Linda Walton and Lorna Landherr. ECF No. 64, 77:21-80:6. Ms. Comeaux explained to Spilker that her decision was based on the interview. *Id.* at 80:21-18. She provided Mr. Spilker with a specific example of a question and answer from his interview, but he was unable to remember the details. *Id.* at 81:6-18.

3. Director of Human Resources. On February 19, 2023, Mr. Spilker applied for the position of Director of Human Resources, which required a bachelor's degree. ECF Nos. 94-2, 94-3, 94-36. Mr. Spilker did not have a bachelor's degree. ECF No. 64 45:13-46:7. Mr. Spilker was notified that he could not be considered for the position because he did not meet the minimum

requirements for the position. ECF No. 94-36. Mr. Spilker again applied for Director of Human Resources on July 7, 2023. ECF No. 94-2. He still did not possess a bachelor's degree and was notified that he did not meet the minimum qualifications for the position. ECF No. 94-3, 94-37; ECF No. 64 45:13-46:7.

4. Patient Service Navigator. On February 20, 2023, Mr. Spilker applied for the position of Patient Service Navigator. ECF No. 94-2 at 2. The position was received by Jasmine Johnson. ECF No. 96-1, Resp. to No. 11. Mr. Spilker has no knowledge about the job-related qualifications or experience of Ms. Johnson. ECF No. 64 101:23-102:4.

5. Patient Companion. On February 23, 2023, Mr. Spilker applied for the position of Patient Companion, which was filled by Mikaela Robinson. ECF Nos. 94-2, 96-1, Response to No. 11. Spilker has no knowledge about the qualifications or experience of Ms. Robinson. ECF No. 64 102:5-11.

6. Department Supervisor III. On November 25, 2023, Mr. Spilker applied for the position of Department Supervisor III, which requires a bachelor's degree and at least four years of supervisory experience. ECF Nos. 94-2, 94-45. Mr. Spilker did not have a bachelor's degree nor four years of supervisory experience. ECF No. 64 45:13-46:7, 27:14-28:3, 28:24-29:18, 30:6-16, 30:24-31:20, 35:3-12; ECF No. 94-15. Cleveland Clinic notified Mr. Spilker that he did not meet the minimum requirements and could not be considered for the position, which was filled by Ashley Ruiz. ECF Nos. 94-

46; 96-1 ¶11. Mr. Spilker had no knowledge of Ms. Ruiz's experience or qualifications. ECF No. 64, 102:12-18.

7. Director – Ambulatory Operations. On November 27, 2023, Mr. Spilker applied for the position of Director – Ambulatory Operations and withdrew his application after he was informed that another candidate had been selected. ECF No. 94-2, at 2; ECF No. 64, 168:17-170:7. Mr. Spilker never compared his qualifications for the position to those of the person who he believes received the position. *Id.* at 171:14-17.

Mr. Spilker applied for a number of other positions within Cleveland Clinic for which he was not selected, including Registration Liaison, Account Representative II, Corporate Compliance Coding/Billing Specialist, Candidate Experience Associate, Department Manager I, Program Manager III, Administrative Program Coordinator, Clinical Technician, OR Service Assistant, Talent Acquisition Preboarding Coordinator, and HR Generalist. ECF Nos. 94-2, 96-1; ECF No. 64, 102:19-107:5. He has no knowledge of the qualifications or experience of any of the individuals who filled the positions. *Id.*

Cleveland Clinic's Behavioral Health Center ("BHC") is a facility that adjoins the hospital where Mr. Spilker worked and treats patients with mental health conditions or illnesses. ECF No. 64, 204:10-205:2. Mr. Spilker worked as a floater and sometimes provided patient care at the BHC. *Id.* 204:3-9. On June 21, 2024, an altercation occurred at the BHC between Mr. Spilker and two other employees, and those employees complained about Mr. Spilker. *Id.* 205:3-206:5; ECF No. 94-17. The

Nurse-Manager informed Mr. Spilker's supervisor, Barbara Sills, of various concerns regarding his interactions and conduct. ECF No. 94-17. After Ms. Sills received the information, she indicated that Mr. Spilker should not return to the BHC to work. ECF No. 64, 207:7-21.

Cleveland Clinic uses an electronic medical recordkeeping system known as EPIC. ECF No. 64, 188:5-17. Mr. Spilker was allowed to use EPIC solely for what was necessary to provide and document patient care. *Id.* at 188:5-17, 197:3-7, 212:6-10. Caregivers such as Mr. Spilker are permitted to access confidential information, which includes patient and clinical information, "solely for authorized work-related activity and strictly on a need to access basis to perform such work." ECF No. 94-42 at 1-2.

Mr. Spilker was an hourly employee, was required to "clock in," and was prohibited from working "off the clock." ECF No. 94-6, 94-39 at 2; ECF No. 64 at 185:8-10. Reviewing patient records on the EPIC system before clocking in is considered working off the clock. *Id.* at 263:18-264:5, 267:7-22.

On January 10, 2025, a Nursing Operations Manager, Melody Noelke, reported to Mr. Spilker's supervisor, Ms. Sills, that she had witnessed Mr. Spilker accessing EPIC off the clock. ECF No. 94-29 at 2. Ms. Noelke expressed concern about Mr. Spilker's access and if he had accessed information about BHC patients because he appeared to have information about BHC patients obtained through EPIC even though he no longer worked at the BHC and had not worked there since June 2024. *Id.* On January 13, 2025, a compliance specialist was notified about Mr. Spilker's

EPIC access, and she identified nine patient charts that were accessed on January 10, 2025, using Mr. Spilker's credentials before Mr. Spilker clocked in for his shift that day. ECF Nos. 94-30, 94-7 at 1. The specialist emailed Mr. Spilker on January 27, 2025, to ask his availability to discuss her findings. ECF No. 94-8. Mr. Spilker called her within moments of receiving the email, then requested a meeting with Ms. Sills. ECF No. 64, 181:4-20, 182:10-183:10, 216:7-22; ECF No. 94-9. While meeting with Ms. Sills, Mr. Spilker admitted he had accessed the computer before clocking in and stated that he was accessing the computer to "look[ ] up" employees working at the BHC. ECF No. 64, 216:20-217:22.

The next day, January 28, 2025, Mr. Spilker attended a meeting with Ms. Sills and an HR official, Jennifer Roosa. ECF No. 64, 220:12-221:8, 233:5-7. In this meeting, Mr. Spilker was asked if he had ever shared his EPIC password, which he denied. ECF No. 64, 224:3-227:2. He did indicate that he would use his ID badge to sign in to train (or "precept") employees on how to use a medical testing device, called a glucometer, that tests blood sugar. *Id.* In those instances, the medical record would reflect that Mr. Spilker performed the test when the other employee had actually performed it. ECF No. 64, 265:7-266:24. On January 29, 2025, Mr. Spilker requested a personal leave of absence through February 5, 2025. *Id.* at 234:2-17.

On February 11, 2025, Cleveland Clinic's investigators completed their Final Investigative Report, which closed the investigation and recommended terminating Mr. Spilker's employment. ECF No. 94-7 at 1. Cleveland Clinic concluded that Spilker had violated workplace policy by accessing medical records without a job-related

reason to do so. ECF No. 94-12 at 3. Cleveland Clinic also concluded that by allowing others to access the glucometer using his ID badge, it was inaccurately documented in patient records that Mr. Spilker had performed tests when others performed them. ECF No. 94-12 at 3. Cleveland Clinic further concluded that by performing work prior to clocking in, Spilker violated the timekeeping policy. *Id*. Altogether, Cleveland Clinic concluded that Spilker was responsible for two major infractions and one minor infraction. *Id*. On February 14, 2025, Spilker was notified that his employment was terminated. ECF No. 94-12.

On February 12, 2025, Mr. Spilker filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"). ECF No. 8 ¶32, ECF No. 86-1 at 3–5. He filed an amended charge on February 25, 2025. *Id.*

## DISCUSSION

Mr. Spilker brings the following claims against Cleveland Clinic: (1) Race Discrimination under the Florida Civil Rights Act ("FCRA"); (2) Sex/Gender Discrimination under the FCRA; (3) Retaliation under the FCRA; (4) Race Discrimination under 42 U.S.C. § 1981; (5) Race Discrimination under Title VII; (6) Sex/Gender Discrimination under Title VII; and (7) Retaliation under Title VII. ECF No. 8.

### *A. Race Discrimination*

Mr. Spilker contends that he applied to positions at Cleveland Clinic that were given to less experienced, less qualified individuals who were women and/or

minorities, and attributes his rejection to Cleveland Clinic's discriminatory policies. ECF No. 81-1 ¶19. He also alleges that his race and gender were motivating factors in Cleveland Clinic's termination of his employment. *Id.* ¶45–50.

Title VII makes it unlawful for an employer to discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of his race or sex. 42 U.S.C. § 2000e-2(a)(1); *Horace v. ARIA*, No 23-12414, 2024 WL 1174398, at *4 (11th Cir. Mar. 19, 2024). Similarly, the FCRA makes it unlawful for an employer to "discharge ... any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race ... [or] sex." Fla. Stat. § 760.10(1)(a). Under 42 U.S.C. § 1981, "[a]ll persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens," which in an employment context has been interpreted to mean protection against discrimination based on race. *Felder v. Bradford Health Servs.*, 493 F. App'x 17, 19 (11th Cir. 2012) (citing *Webster v. Fulton Cnty., Ga.*, 283 F.3d 1254, 1256 (11th Cir. 2002)). Discrimination claims brought under Title VII, § 1981, and the FCRA are analyzed under the same framework. *See, e.g.*, *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 n.6 (11th Cir. 2015); *Felder*, 493 F. App'x at 19 n.3 (citing *Rice-Lamar v. City of Fort Lauderdale, Fla.*, 232 F.3d 836, 843 n.11 (11th Cir. 2000)); *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022).

A plaintiff may use either direct evidence or circumstantial evidence to show race discrimination. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086–87 (11th

Cir. 2004), *abrogated on other grounds by Lewis v. City of Union City*, 918 F.3d 1213, 1218 (11th Cir. 2019). If the plaintiff uses circumstantial evidence to support his discrimination claim, courts generally apply the *McDonnell Douglas* burden-shifting framework. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174, 1181 (11th Cir. 2010); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under *McDonnell Douglas*, a plaintiff must show (1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) he was qualified to perform the job in question, and (4) his employer treated similarly situated employees outside his protected class more favorably. *Jenkins*, 26 F.4th at 1249. In the failure-to-promote context, the *prima facie* case requires showing (1) that the plaintiff belongs to a protected class; (2) that he applied for and was qualified for a promotion; (3) that he was rejected despite her qualifications; and (4) that other equally or less-qualified employees outside her class were promoted. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010). To establish the fourth prong, a plaintiff must present evidence of a comparator, someone who is "similarly situated in all material respects." *Jenkins*, 26 F.4th at 1249 (quoting *Lewis*, 918 F.3d at 1224). "Although what constitutes a 'material' similarity or difference will differ from case to case, ordinarily a similarly situated comparator and the plaintiff will: have engaged in the same basic conduct or misconduct, be subject to the same employment policies, have the same supervisor(s), and share an employment or disciplinary history." *Id.*

If a plaintiff establishes a *prima facie* case, the employer must articulate a non-discriminatory reason for the adverse employment decision. *Kidd v. Mando Am.*

*Corp.*, 731 F.3d 1196, 1205 (11th Cir. 2013). "Because the employer's burden is one of *production*—not persuasion—the employer "need not persuade the court that it was *actually* motivated by the proffered reason[ ]." *Id.* (quoting *Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir.2000)) (emphasis added in *Kidd*). Once the employer identifies a reason, the burden shifts back to the plaintiff to introduce evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id.*

Cleveland Clinic argues that Mr. Spilker fails to (1) show he was qualified for the positions he sought, (2) show that the jobs were given to less qualified individuals, or (3) identify any similarly situated comparators. ECF No. 98 at 14–17. Mr. Spilker argues that his qualifications include an associate in arts degree obtained August 4, 2023, a bachelor's degree and healthcare administration certificate obtained December 8, 2023, various letters and commendations praising his work, and serving as chair for "monthly council meetings." ECF No. 102 at 3–6. He claims he was given "intermittent supervisory roles" in which he was asked to train new employees and those roles gave him the requisite supervisory experience to qualify for the positions he sought at Cleveland Clinic. *Id.* at 5. Mr. Spilker does not provide any evidence regarding the qualifications of other employees who filled these positions, and testified that he does not have any information regarding those qualifications. *Id.*; ECF No. 64.

Here, it is clear that Mr. Spilker was not qualified for at least some of the positions sought, such as HR Director, which required a bachelor's degree at the time he did not have one and several years of human resources experience. For those positions he was arguably qualified for, he fails to show that the positions were given to less-qualified individuals and fails to identify any proper comparators. He simply speculates that because women and/or minority candidates received the jobs, Cleveland Clinic must have discriminated against him. A plaintiff cannot succeed on a failure-to-promote discrimination claim "by simply quarreling with the wisdom" of the employer's reasons for hiring another candidate and "cannot prove pretext by simply arguing or even by showing that [s]he was better qualified than the person who received the position [s]he coveted." *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1206 (11th Cir. 2013). Mr. Spilker "must show that the disparities between the successful applicant's and [his] own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over [him]." *Id.* (quoting *Convergys Consumer Mgmt. Grp.*, 509 F.3d 1344, 1349 (11th Cir. 2007)). Mr. Spilker provides no information or evidence whatsoever regarding the other candidates' qualifications, admits he knows nothing about those qualifications, and made no effort to ascertain those qualifications. ECF Nos. 64, 102, 109. He simply assumes there must have been discrimination because he was not selected. Cleveland Clinic provides evidence of some other candidates' qualifications. For example, the Manager – Patient Transportation position required "[h]igh-level management and leadership skills"

and "[a] minimum of 3 years of supervisory experience," with a preference for patient transportation experience. ECF Nos. 97 ¶3, 94-13 at 2. The candidate who filled the position, Mr. Shdifat, had qualifications that included more than three years' experience as a director of patient transportation, a year as Bureau Chief for the State of Delaware Department of Public Health, and a Master of Science degree in health care administration. ECF No. 97 at ¶5; ECF No. 94-38. Mr. Spilker does not dispute these qualifications, nor does he dispute the qualifications of any other candidates who were selected for positions he sought. ECF Nos. 64, 102, 109. Accordingly, his claim for race and gender discrimination on the theory that he was not promoted or selected for certain positions must fail. *See Kidd*, 731 F.3d at 1206.

Mr. Spilker also attributes his termination, at least in part, to race and gender discrimination, but fails to identify any potential comparators or show that any similarly situated employees engaged in the same or similar conduct and were terminated. Regarding comparators and termination, *Jenkins* is instructive. In *Jenkins*, the plaintiff, Jenkins, was a white male who worked as a crane operator. *Id.* at 1246. Nell, his supervisor, was a Black male. *Id.* Jenkins was upset that Nell denied his request for leave while granting the same request for a Black crane operator, among other complaints. *Id.* at 1246–47. Jenkins scheduled an appointment with the human resources department, but had a contentious meeting with Nell the evening before after which Nell told Jenkins to go home and not work his shift. *Id.* at 1247. The next morning, Jenkins learned his HR appointment had been canceled and the incident with Nell was under review. *Id.* Ultimately, Jenkins was terminated for

failing to carry out direct orders, insubordination, disrespect for a supervisor, and threatening a supervisor. *Id.* Jenkins argued that Nell's conduct was racially motivated and provided three Black crane operators as potential comparators for the fourth prong of *McDonnell Douglas*. The court determined that the crane operators were not proper comparators because, for two of them, there was no evidence they engaged in similar misconduct, and the circumstances surrounding the third operator's misconduct differed from those of the plaintiff. *Id.* at 1250. Because the plaintiff failed to identify a comparator, summary judgment was appropriate. *Id.*

Here, Mr. Spilker does not identify anyone as a comparator nor provide any evidence that another similarly situated employee was terminated for similar conduct. Therefore, summary judgment should be entered in favor of Cleveland Clinic on all of Mr. Spilker's claims for discrimination. *See Adewumi v. Wellstar Med. Grp.*, No. 24-12243, 2025 WL 831584, at *6 (11th Cir. Mar. 17, 2025) (insufficient comparator evidence failed to give rise to presumption of discrimination and summary judgment was appropriate); *Lewis*, 918 F.3d at 1225, 1227–28.

*B. Retaliation*

Regarding his retaliation claims, Mr. Spilker asserts that he was terminated in retaliation for filing a charge of discrimination with the EEOC and for making internal complaints about discrimination. ECF No. 81-1 ¶¶24-25. He states that he filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR") on February 12, 2025, and an amended charge on February 25, 2025. ECF No. 8 ¶32, ECF No. 86-1 at

3–5. He was terminated on February 14, 2025. ECF No. 94-12. The only specific internal complaint Mr. Spilker references is an email he sent to Kelly Hancock on March 21, 2024, approximately eleven months prior to his termination. ECF Nos. 81-1 ¶¶14, 23; ECF No. 95-7 ¶15.

To establish a *prima facie* case for retaliation under Title VII, a plaintiff must show (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) there is some causal connection between the two events.[1] *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007). If the plaintiff satisfies his burden, then the employer must articulate a legitimate, non-retaliatory reason for the adverse action. *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1135 (11th Cir. 2020). The burden of causation may be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action, but mere temporal proximity, without more, must be "very close." *Thomas*, 506 F.3d at 1364 (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Further, "[a] causal link between protected expression and the materially adverse action arises where the defendant was aware of the protected expression and took materially adverse action as a result." *Burks v. Bd. of Trustees of Fla. Agric. & Mech. Univ.*, 505 F. Supp. 3d 1273, 1282 (N.D. Fla. 2020); *Addison v. Gwinnett Cnty.*, 917 F. Supp. 802, 810 N.D. Ga. 1995 (no evidence that employer knew of employee's protected activity when employee was terminated). "[W]hile a short lapse of time might raise an

[1] Title VII and FCRA retaliation claims are analyzed under the same framework. *See Decoste v. City of Boynton Beach*, 818 F. Supp. 3d 1360, 1372 (S.D. Fla. 2026) (citing *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020)).

inference of discrimination, such an inference does not arise when intervening factors are established" such as warnings about job performance or a plaintiff's workplace errors. *Spence v. Panasonic Copier Co.*, 46 F. Supp. 2d 1340, 1348 (N.D. Ga. 1999). *See Hall v. AT&T Mobility Servs., LLC*, No. 10-CV-150, 2011 WL 3425642 (M.D. Fla. Aug. 5, 2011) (warning given about performance prior to protected activity "severs the causal connection necessary for a prima facie case") (quoting Spence, 46 F. Supp. 2d at 1348–49).

Mr. Spilker engaged in protected activity by filing a charge with the EEOC, and he suffered an adverse employment action by being terminated. There is close temporal proximity, as he was officially terminated two days after filing the EEOC charge; however, this proximity is insufficient to establish a causal connection when all the evidence is considered. Weeks prior to the termination, beginning January 13, 2025, Cleveland Clinic began investigating Mr. Spilker's conduct in accessing EPIC medical records, working off the clock, and misreporting who performed certain tests on patients. ECF Nos. 64, 94-7, 94-8. On February 11, 2025, the day before Mr. Spilker filed the charge, Cleveland Clinic closed its investigation and recommended terminating Mr. Spilker's employment. ECF No. 94-7 at 1. In its February 11 recommendation, Cleveland Clinic determined that Mr. Spilker violated workplace policy by accessing medical records without a job-related reason to do so, performing work prior to clocking in, and allowing others to access the glucometer using his identification badge. ECF Nos. 94-7 at 1, 94-12 at 3. Mr. Spilker comes forth with no evidence that Cleveland Clinic knew about his EEOC and FCHR charges when it

terminated his employment; indeed, it could not have known about the charge being filed when Cleveland Clinic closed its investigation and recommended termination before the charge was filed. Thus, Cleveland Clinic had already decided to fire Mr. Spilker before he filed his charge, and the charge could have no bearing on that decision.

Regarding Mr. Spilker's March 2024 letter to Ms. Hancock, there is no evidence that it constituted protected activity, and there is no causal connection between that letter and Mr. Spilker's termination. In the letter, Mr. Spilker said he was grateful and honored to work for Cleveland Clinic, noted his achievements and qualifications for obtaining new positions at Cleveland Clinic, and sought assistance in securing a managerial position. ECF No. 94-5. The letter makes no mention of anything that could be remotely construed as discriminatory; rather, it is a polite and flattering letter seeking ways to move up the ranks in the workplace. *Id.*

Accordingly, Mr. Spilker failed to present evidence from which a reasonable jury could find in his favor on his retaliation claims. Therefore, the Court should enter summary judgment in favor of Cleveland Clinic. *Thomas*, 506 F.3d at 1364.

## RECOMMENDATION

Accordingly, it is RECOMMENDED that Cleveland Clinic's Motion for Summary Judgment, ECF No. 98, be GRANTED and judgment entered in Cleveland Clinic's favor.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Donald M. Middlebrooks, United States District Court Judge for the Southern District of Florida, within **SEVEN (7) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If parties do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 17th day of August 2026.

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE